MALCOMSON v. WAPPOO MILLS et al.

Ex parte LEWIS et al.

(Circuit Court, D. South Carolina.   March 11, 1898.)

LANDLORD AND TENANT—LIEN FOR RENT—STATUTE OF ANNE.

   Under the statute of Anne, in force in South Carolina (section 1943), which
   provides that goods taken on execution shall not be removed from leased
   premises until rent due at the time of the taking of the goods in execution
   is paid, the landlord has a lien for rent due at the time of the appointment
   of a receiver for the property of a lessee, but not for rent which subsequently
   accrued.

Charles Inglesby and H. A. M. Smith, for petitioner Lewis.
Lord & Burke, for petitioner Cuthbert.
Smythe, Lee & Frost, for general creditors.

SIMONTON, Circuit Judge.   This case came up some days ago
upon the petition of George T. Lewis, claiming a lien for rent upon
some tons of phosphate rock on lands leased by him to C. C. Pinckney,
Jr.   After hearing the pleadings and argument of counsel, it was
determined that the instrument under which C. C. Pinckney, Jr., held
these phosphate lands did not create a license to mine, but was a
demise by way of lease.   The effect and operation of this construc-
tion was the sale by Lewis to Pinckney of so much phosphate rock as
he should dig, mine, and remove from the land during the term (Mas-
sot v. Moses, 3 S. C. 168), upon a rent estimated by way of royalty
on each ton so dug, mined, and removed.   The instrument having
been construed to be a lease, and the relation of landlord and tenant
having so been established between Lewis and Pinckney, the former
was given all the rights of a landlord, and, under ordinary circumstan-
ces, a right to distrain for rent.   But, the property of Mr. Pinckney
having been placed in the hands of a receiver before this right of
distress was exercised, it was held that the equity of the statute of
Anne (of force in South Carolina) should be applied to this case, and
that Mr. Lewis would be secured in this personalty the same lien,
under the equitable execution of the receivership, which he would have
had if a levy had been made under an execution at law.   A reference
was ordered to the special master "to ascertain what rent or royalty
was due under the lease of George T. Lewis to C. C. Pinckney, Jr.,
and under the tripartite agreement, part and parcel thereof, at the
date of the appointment of the receiver in this case, and, if it be less
than the annual sum which, under said lease and said tripartite agree-
ment, the said C. C. Pinckney, Jr., is liable to pay each year as rent
for said lands."

The special master has made his report.   It appears that by the
terms of the lease the rent was payable quarterly, on the 1st days
of September, December, March, and June in each year.   The receiver
in this case was appointed on the 18th day of October, 1897.   On
19th October, 1897, the landlord entered upon the land, and distrained
on the rock.   On 20th of October, exercising his rights under the
lease, with the full recognition and concurrence of the court, he

rescinded the lease. On that day there was due and unpaid part of the rent for the quarter ending 1st of June, and the whole of the rent for the quarter ending 1st September, 1897, being in all $2,125. Besides this, 1 month and 18 days had elapsed from the termination of the quarter ending 1st September. The proportionate rent for this period is $799.81.

No question whatever is made as to the sum of $2,125, first mentioned. That must be paid out of the proceeds of the sale of the phosphate rock. The question is as to the sum last mentioned, $799.81. Does that stand on the same footing? This court has held that when leased property is in the hands of a receiver, appointed by it, upon which there are arrears of rent, the landlord will be allowed the same protection for his rent as he would have had under the statute of Anne, if an execution at law instead of an equitable execution had been levied on the leased property. What, then, would have been the protection given to the landlord for his rent under these circumstances? What rent would be secured to him,—the rent then actually due, or the rent accruing up to the date of the levy?

The statute is in these words:

"Sec. 1943. No goods or chattels whatsoever lying or being in or upon any messuage, lands or tenements which are or shall be leased for life or lives, term of years, at will or otherwise, shall be liable to be taken by virtue of any execution on any pretense whatsoever unless the party at whose suit the said execution is sued out shall, before the removal of such goods from off the said premises, by virtue of such execution, pay to the landlord of the said premises, or his bailiff, all such sum or sums of money as are or shall be due for rent for the said premises at the time of the taking such goods or chattels by virtue of such execution: provided, the said arrears of rent do not amount to more than one year's rent. In case the said arrears shall exceed one year's rent, the party at whose suit such execution is sued out, on paying the said landlord or his bailiff one year's rent, may proceed to execute his judgment; and the sheriff or other officer is hereby empowered and required to levy and pay to the plaintiff as well the money so paid for rent as the execution money."

The statute says: "All such sum or sums of money as are or shall be due for rent for the said premises at the time of taking such goods or chattels in execution." The statute has been repeatedly passed upon by the courts of last resort in South Carolina. In Watson v. Hudson, 3 Brev. 60, it is held that this remedy of the statute is not applied when rent is not due. In Ayres v. Depras, 2 Speer, 370, Judge D. L. Wardlaw, speaking for the court, says: "Under the statute of Anne, the landlord can claim payment only on the rent due at the time the sheriff made the seizure, and goods in the hands of the latter are not liable to distress." In this case some time having elapsed between the levy and the sale, the court confined the remedy of the landlord to the rent due at the date of the levy, and excluded him from any remedy for the rent thereafter accruing. This case in 2 Speer seems on all fours with this case. In that case the quarter's rent was due and payable on 1st of April, and the levy was on 28th of March. The goods were retained in the hands of the sheriff for some time after the 1st of April. The court says: "The landlord could not, after the levy, have distrained; and, as no rent was due at the levy, he cannot maintain his claim to be paid the rent which sub-

85 F.—58

sequently accrued out of the proceeds of sale." In Re Connor, 12 Rich. Law, 352, it was held that the sheriff could only be held liable for the. rent due at the time of the levy; for rent becoming due afterwards he is not liable. No further citation of authorities is necessary. By the terms of the lease in this case, the rent was due and payable on the 1st of December ensuing after the levy. No rent was due and payable on the 18th of October, 1897. Mr. Lewis, therefore, as to the rent accruing after the 1st of September, but not yet due, is not entitled to the protection of the statute. He may be entitled to charge for the use of the land for that time, but he is not within the terms or the equity of the statute, and is not entitled to the retention of the proceeds of the sale of the rock for his security. It is urged that this rock is the property of Mr. Lewis, and that he is entitled to hold it until the royalty is paid. But, after full argument, it has in this case been decided that Pinckney was not operating under a license to dig the rock of Mr. Lewis; on the contrary, that he held under a demise of all the rock he could dig and mine out of this land in a term of years. When so dug and mined, and separated from the freehold, it became and was his own absolute property. For this Mr. Lewis received the quarterly installments by way of rent or royalty. The lien for rent due and unpaid depends for its existence upon the fact that the rock was the property of Pinckney. It is ordered that the receiver pay to the petitioner, out of the proceeds of sale of the phosphate rock in his hands, the sum of $2,125.